IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IGNACIO BALLESTAROS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04 C 6486 |
| | ) | |
| JO ANNE B. BARNHART, | ) | Judge Mark Filip |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Ignacio Ballestaros ("Plaintiff" or "Ballestaros") seeks reversal of the final decision of the Commissioner of Social Security, Jo Anne B. Barnhart, denying his application for Disability Insurance Benefits ("DIB"). (D.E. 8.)[1] The Commissioner seeks affirmance of the decision. (D.E. 10 at 15.) The decision, which is set forth in the Administrative Law Judge's ("ALJ") ruling (A.R. at 16-22), denied Ballestaros's application for DIB under the Social Security Act. Ballestaros argues that the ALJ's decision should be reversed because the ALJ erred in finding "no severe impairment(s)," at the time the his disability insurance expired, "causing the sequential evaluation process to end at [S]tep [Two]" of the potential five-step analytical process outlined in 20 C.F.R. § 404.1520. (D.E. 8 at 9.) In this regard, Ballestaros also argues that the ALJ did not give proper weight to his testimony in reaching the above determination. The Court respectfully disagrees with Ballestaros's contentions, and it denies his motion to reverse the final decision of the Commissioner of Social Security.

---

[1] The various docket entries in the case are cited as "D.E. __." The Administrative Record, which was filed as D.E. 5, is cited as "A.R. __." The Court takes the relevant facts from the Administrative Record, as the parties did in this Court.

# I.  **RELEVANT FACTS**

### A.  Overview

This is a rather unusual case, concerning an application for disability benefits that was filed roughly nine years after Plaintiff alleges he became disabled from debilitating pain in his back and legs. The injury that allegedly precipitated the disability took place even further back in time. It is undisputed that for Ballestaros to be entitled to disability benefits, he needs to establish that any disabling impairment began by the end of 1991—or roughly nine years before he actually raised his DIB claim. (D.E. 8 at 5.) This combination of factors presents material challenges for Plaintiff—particularly given that there are no medical records whatsoever supporting his disability claim from the period in which he was eligible for DIB coverage.

Ignacio Ballestaros was born on December 1, 1950. Ballestaros was naturalized as a citizen of the United States on April 16, 1985 (A.R. at 105), and he worked as a spot welder at All-Steel, Inc., in Illinois from October 1972 through 1986 (*id.* at 115). Ballestaros stopped working at All-Steel in 1986 because his wife suffered from a lingering illness. (*Id.* at 114.) In an attempt to move to a more hospitable climate for his wife's condition, Ballestaros and his wife (since deceased) returned to Mexico in 1986, and the couple appears to have moved in with his parents. (*Id.* at 200.)

Plaintiff contends that he injured his back in January 1991, an injury which allegedly stemmed from picking up and moving his wife. (*Id.* at 203-04.) Ballestaros had disability coverage through December 31, 1991, so according to him, his injury occurred while he was still insured for disability benefits. (*Id.* at 17.) In the intervening years, Ballestaros has continued to live on his family's farm, to work on the farm (up until 1996), to care for his wife (until her death

2

in 1996), and he also has remarried. (*Id.* at 19.) Ballestaros testified that he no longer is able to lift bags of seeds or fertilizer on the farm due to his back injury. (*Id.* at 203-04.) Another result of his back injury, he contends, it that he no longer can remain in a seated position for an extended period of time. (*Id.* at 205.) (At the first of the ALJ hearings, however, it was noted that he had been sitting uninterrupted for thirty minutes (*id.* at 183), and he also stated that he sometimes took multi-day bus rides, with 28-30 hours on the bus, from Mexico to Chicago to see a daughter (*id.* at 185).) As discussed below, Ballestaros has seen doctors for a variety of ailments since 1986, most having nothing whatsoever to do with any alleged chronic, acute pain in his back, legs, or feet. He maintains that his back continues to hurt, and that the pain is actually increasing in intensity. (*Id.* at 204.)

Ballestaros first filed an application for Disability Insurance Benefits on January 14, 2000, due to alleged pain in his feet, back, and legs, as well as weakness in his legs. (*Id.* at 16, 54, 114.) In his written application, Plaintiff explained that he stopped working in 1986 because of the illness of his wife (*id.* at 114)—who, incidentally, died in 1996 (*id.* at 19). Plaintiff asserted disability on the basis of "back pain," "pain in [his] feet" and weakness in his legs, that started at an unidentified time in 1990 but allegedly rendered him disabled as of January 1, 1991. (*Id.* at 114.) As explained, the date at which time, if any, Ballestaros became disabled is especially pertinent because his DIB coverage expired on December 31, 1991. (*Id.* at 16.)

The ALJ first heard Ballestaros's case on September 26, 2000. Ballestaros was represented by counsel. (*Id.* at 164.) On January 22, 2001, the ALJ issued an "Unfavorable Decision, determining that the claimant was engaging in substantial gainful activity through his last date insured." (*Id.* at 16.) (This position was based on the apparent fact that Ballestaros was

3

working on the family farm in Mexico.) The Appeals Council vacated this first Unfavorable Decision on August 28, 2001, because the record failed to establish that Ballestaros was paid for his work on the farm, as opposed to receiving food and board from his parents. (*Id.* at 76.) Therefore, there was insufficient support for the conclusion that Ballestaros was engaging in substantial gainful activity under the Social Security Act. (*Id.*) The ALJ was told to proceed "through the sequential evaluation process." (*Id.*)

A second hearing was held before the ALJ on November 14, 2001. (*Id.* at 16.) Plaintiff was again represented by counsel at this hearing. (*Id.*) After proceeding upon the review prescribed by the Appeals Council, the ALJ once again denied Ballestaros's claims. (*Id.* at 16-22.) The Appeals Council denied Ballestaros's second claim for review, stating that it "found no reason . . . to review the Administrative Law Judge's decision." (*Id.* at 5.) Ballestaros now seeks this Court's review of the ALJ's second and final decision.[2]

B.    Medical Record Evidence

---

[2]    In his brief, Ballestaros contends that venue is appropriate because "Plaintiff resides in this district." (D.E. 8 at 1.) This representation appears to be clearly false, as Ballestaros testified that he has resided in Mexico since the mid-1980s (A.R. at 169-70, 200). In this regard, the record suggests that Ballestaros appears to have told the SSA through his attorney that he preferred to have his DIB application processed in Aurora, Illinois (where his daughter lives) as opposed to through the U.S. Consulate in Mexico (*id.* at 127), and Mr. Ballestaros repeatedly made clear that he does not reside in this district. For example, he also discussed (in addition to his testimony that he has lived in Mexico since the mid 1980s), how he travels to Aurora on a plane or bus (*id.* at 184-85, 208), and further explained that he was in Aurora to visit his daughter and to attend his ALJ hearing about his DIB claim (*id.* at 169). None of this testimony is consistent with the idea that "Plaintiff resides in this district." However, the government makes no objection as to venue, and as such objections can be waived—*see Blackman v. Shalala*, No. 92 C 5472, 1993 WL 181466, at *5 (N.D. Ill. May 27, 1993); *Davis v. Califano*, 437 F. Supp. 978, 979 n.1 (N.D. Ill. 1977) ("[T]he failure of defendant to seasonably object waives the improper venue and does not affect the jurisdiction of this court to hear this particular case."); Fed. R. Civ. P. 12(h)(1)—the Court proceed to the merits.

4

The medical records assembled reflect that, over the last fifteen years, Plaintiff has suffered from a number of accidents and illnesses, most of which have nothing whatsoever to do with his alleged chronic back, leg, and/or foot pain. At the hearing, several exhibits were admitted into evidence, including the records of Ballestaros's treating physician in Mexico, Dr. Jose Garcia. With the exception of an accident in 1997, Dr. Garcia is the only physician Ballestaros visited on record. (*Id.* at 144-61.)

On February 5, 1991, Ballestaros visited Dr. Garcia complaining of a "severe headache, nausea, vomiting, fever, and abdominal pain and body aches." (*Id.* at 140.) Ballestaros suffered from a fever of 39.2 degrees Celsius (102.6 degrees Fahrenheit). Dr. Garcia also noted that Ballestaros had a "bigeminal pulse, peristalis present, increased in frequency and intensity and pain on deep palpation of the colon area." (*Id.*) Dr. Garcia made a diagnosis of typhoid fever. Ballestaros was given intravenous fluids along with other medications to treat typhoid fever. The record does not suggest that Ballestaros had any follow up visits, and nothing in the record indicates Ballestaros even mentioned his alleged severe back injury or foot pain to Dr. Garcia. (*Id.*) This was the first and only documented visit Ballestaros took within the time period he was eligible for DIB benefits.

On September 12, 1992, Ballestaros visited Dr. Garcia complaining of "intense pain in the lumbar region" of the back. (*Id.* at 153.) This was the first documented time Ballestaros saw a physician regarding his back problems—and some nine months after his DIB coverage ended. (*Id.* at 189.) Dr. Garcia stated in his notes that Ballestaros "required urgent care because of intense pain" and that the "patient indicate[s] that the problem occurred after lifting a sack weighing 50 kg." (*Id.* at 153.) Dr. Garcia prescribed Piroxy and Diporine and recommended

Ballestaros rest on a hard bed. (*Id.*) It does not appear that any follow up visits occurred or were prescribed. (*Id.*)

Ballestaros saw Dr. Garcia again on June 18, 1993, after Ballestaros had been suffering from diarrhea and vomiting for two days "after digesting pork," where the "problems initiated some 4 hrs after ingestion." (*Id.* at 151.) As a result of the vomiting and diarrhea, Ballestaros suffered from paleness and dehydration. (*Id.*) Dr. Garcia treated Ballestaros for diarrhea and nausea. (*Id.*) The records do not include any indication that Ballestaros sought treatment for or even mentioned any back, leg, or foot pain. (*Id.*)

On March 22, 1994, Plaintiff had an undisclosed accident involving a plow, and he saw Dr. Garcia regarding pain in his foot and difficulty walking. (*Id.* at 149.) X-rays showed fractures of the first and second metatarsal. (*Id.*) Dr. Garcia also noticed edema, hyperemia, and increased temperature in the affected area. (*Id.*) Dr. Garcia immobilized the foot and observed that the fracture appeared to be aligned. (*Id.*) Dr. Garcia prescribed Naproxen and Diperona for the pain. Ballestaros was told to return in 22 days. (*Id.*) There is no suggestion that Ballestaros sought treatment for or at the time even mentioned any back or leg pain, nor even any chronic foot pain beyond the broken foot. (*Id.*)

On November 16, 1995, Ballestaros saw Dr. Garcia because he had been "suffering [from a] cough for 5 days," and had experienced a "fever for 2 days, chills," and respiratory difficulties. (*Id.* at 147.) He was diagnosed with lobular pneumonia and admitted to the hospital for treatment. (*Id.*) There is no suggestion that Ballestaros sought treatment for or mentioned any back, leg, or foot pain. (*Id.*)

On May 11, 1996, Dr. Garcia saw plaintiff for "balls" on his body, which Dr. Garcia

diagnosed as benign lipomas. Treatment was not given. (*Id.* at 145.) There is no suggestion that Ballestaros complained of any back, leg, or foot pain. (*Id.*)

On July 7, 1997, orthopedist Dr. Eduardo Perez Oliva reported that Ballestaros had been hospitalized for two weeks due to injuries he sustained when he was run over by a tractor while repairing it on March 18, 1997. (*Id.* at 155.) Ballestaros had sustained multiple and severe injuries including multiple fractures in the foot and his "iliopubico and left isquiopubic branches." (*Id.*) Ballestaros also sustained rib fractures, bladder injuries, and pains and injuries in various other areas of his body. Surgery was necessary to repair his left foot. Temporary Kirshner pins were placed in Ballestaros's left foot and were to remain for 28 days. (*Id.*) At this time, the doctor noted that Ballestaros would "continue with rehabilitation (muscle strengthening and walking)," that he should use a "comfortable shoe with silicon insole," and that he should "[c]ontinue under medical observation until full recuperation." (*Id.*) The doctor also noted that Ballestaros's prognosis was "[g]ood for life and functions." There is no suggestion that Ballestaros claimed that he was disabled or that he had long been suffering from debilitating back, leg, or foot pain. Nor is there any limitation indicated on the "good" prognosis for him, or his expected "full recovery," based on any chronic debilitating pain.

On February 15, 1998, Ballestaros was treated by Dr. Garcia and hospitalized for hepatitis amibiasis. (*Id.* at 159.) There is no suggestion in the medical records that Garcia complained of any leg, back, or foot pain at that time. (*Id.*)

Dr. Garcia performed a check-up on Ballestaros on July 10, 2001. He noted that Ballestaros had a cold, but that nothing was wrong with his lungs or abdomen. At that time, Dr. Garcia did find that Ballestaros's right leg was in a lot of pain. He prescribed Naproxen for this

7

pain. (*Id.* at 161.) However, Dr. Garcia made no mention of Ballestaros complaining of a painful or injured back. (*Id.*) That date of this visit was some nine and half years after the cut-off date for Ballestaros's eligibility to qualify for DIB benefits. (D.E. 8 at 5.)

C.    Medical Expert

Dr. Ashok Jilhewar appeared and testified as an impartial medical expert. (A.R. at 16.) Dr. Jilhewar testified that certain deficiencies existed in Ballestaros's proffered medical records. (*Id.* at 210.) Specifically, he stated that "[t]here is no documentation of right, low back pain radiating to the lower extremity until . . . September 12, 1992. That this is the first time there is an office visit with . . . lower back pain." (*Id.*) He further testified that the September 12, 1992, visit notes reflected that Ballestaros "was lifting that 50 kilogram weight and developed a serious pain in the right L3 and L4 region. There was no mention of radiation to the right leg at that time." (*Id.* at 212.) Dr. Jilhewar indicated that there are no follow up records to this visit. (*Id.* at 210.) He noted that the "[o]nly other reference to the back pain is in a lot of pain on the right leg [on] July 10, 2001. And [in the] intervening almost nine years there's no mention in the medical records we have of the symptom he testified." (*Id.* at 211.) As the ALJ put it,

> there is no documentation of the claimant's allegations of low back pain, restrictions, or weakness before the date last insured of December 31, 1991. There is no evidence as to the length of the duration as to the alleged injury of September 1992 . . . . There are no other records or evaluations nor neurological deficits. [. . . .] Dr. Jilhewar testified that there are no medical records supporting the claimant's testimony of pain and functional limitations prior to December 31, 1991, the date last insured for disability under Title II of the [Social Security] Act.

(*Id.* at 20).

D.    Ballestaros's Testimony

Ballestaros testified at the hearing on November 14, 2001. When asked if he was unable

to work as of January 1991, Ballestaros answered affirmatively. (*Id.* at 202.) When asked why, he responded, "[b]ecause that's when the illness to my back started and it went all the way down my leg, so I'm not able to work." (*Id.*) (By way of contrast, at an earlier hearing in the case, Ballestaros had testified that the pain had begun "sometime in the 80s, '87, '88 " (A.R. 179), and, in his written application, he stated that the pain began in "xx/xx/1990." (A.R. 114).) Ballestaros further explained that his "illness" amounted to "an injury or illness that runs down my back, down my leg to my foot and my foot." (*Id.* at 203.) Ballestaros was then asked to explain how the injury occurred. He stated that it occurred while he was lifting and moving his sick wife. (*Id.*)

Ballestaros was next asked about his work in Mexico. He testified that on occasion he worked on his family farm when he was not busy caring for his wife. (*Id.*) He testified that he had to lift around 50 to 60 pounds while working on the farm. (*Id.*). When asked what it was he was lifting, he replied "bags with seeds or fertilizers." (*Id.* at 204.) Ballestaros claimed that the last time he lifted bags was when he started feeling bad in (presumably early) 1991. (*Id.*)

Ballestaros was then asked about his first doctor visit for back pain in September 1992. Referring to Dr. Garcia's report, ALJ Dennis Greene ("Greene" or "ALJ"), asked whether in September 1992, Ballestaros injured his back after lifting a bag weighing 50 kilograms (*id.*)—as that medical report reflects or at least suggests. Ballestaros responded, "I do not think so because I have not lifted things—heavy things since," to which the ALJ replied "I'm going by your medical report." (*Id.*) Ballestaros answered, "Well, like I say—heavy things like that. No." (*Id.*) ALJ Greene then inquired whether Ballestaros believed that his doctor had been wrong in his report, and Ballestaros replied, "[w]ell, maybe not. But like I say, I was not able to lift heavy

9

things like that anymore." (*Id.*)

E.    The ALJ's Decision

After reviewing the record, the ALJ determined that Ballestaros was not disabled at the time his DIB eligibility expired on December 31, 1991. The ALJ proceeded upon the five-step evaluation required by 20 C.F.R. § 404.1520. Following the mandate of the Appeals Council, the ALJ ruled (or at least assumed) that Ballestaros passed Step One of the process—that he was not then performing substantial gainful work because he was paid in food and housing, not money, for his work on his parents' farm. (A.R. at 20.) The ALJ then proceeded to Step Two, examining whether the impairments were "severe" prior to the date Ballestaros was last insured, December 31, 1991. (*Id.* at 20-21.) The ALJ ruled that Ballestaros's disabilities were not severe as of December 31, 1991. Therefore, under 20 C.F.R. § 404.1520, the claimant was not disabled. Based on his ruling that Ballestaros failed to meet the requirements of Step Two of this process, the ALJ ruled that Ballestaros was not disabled. (*Id.* at 16-22.)[3]

In reaching the decision, ALJ Greene examined and discussed the various medical records and testimony Ballestaros presented. He reviewed and presented in his decision all of Ballestaros's past medical history. (*Id.* at 19, 20.) The ALJ also cited to Dr. Jilhewar's finding "that there is no documentation of the claimant's allegations of low back pain, restrictions, or

---

[3]    The government argues that Ballestaros's challenge to the SSA decision is also independently baseless because the ALJ proceeded through the remaining steps of the analytical metric and found that "during the relevant time period, Plaintiff did not have an impairment, or combination of impairments, that met or equaled any impairment in 20 C.F.R., Part 404, Subpart P, App. 1 (the Listings), that Plaintiff could perform work at all exertional levels, and that Plaintiff was capable of performing a significant number of jobs in the economy. (Tr. 21-22.)." (D.E. 10 at 10 n.4.) Given that the Court has determined that there is no reversible error in the ALJ's conclusion that Plaintiff failed to show that he was disabled as of 1991, the Court need not explore whether there are other independent bases that support the ALJ's denial of DIB.

weakness before the date last insured of December 31, 1991." (*Id.* at 20; *see also id.* at 210-11.) The ALJ further noted that Dr. Jilhewar testified "that there are no medical records supporting the claimant's testimony of pain and functional limitations prior to December 31, 1991." (*Id.* at 20, *see also id.* at 210-11.)

The ALJ recognized that "the claimant bears the initial burden of providing evidence of his disability." (*Id.* at 20.) ALJ Greene also found that, "in this case, since it is an application for providing benefits under Title II of the [Social Security] Act [42 U.S.C. § 401 *et seq.*], the claimant also had the burden of providing evidence of disability as of or prior to the date he was last insured under Title II, that is, December 31, 1991." (*Id.*) After considering all the medical records and evidence presented, the ALJ decided that Ballestaros did not qualify for DIB. Specifically, ALJ Greene held that the "the record in this case does not reveal the presence of any significant medically determinable impairments at any time prior to December 31, 1991." (*Id.*) The ALJ further held that "[a]bsent this medical evidence, there is . . . nothing in the record whatsoever which documents that the claimant had any other impairment or malady at that time." (*Id.* at 20-21.)

Finally, after reviewing all the aforementioned testimony and evidence, the ALJ addressed Ballestaros's testimony specifically. The ALJ stated that the "[t]estimony by the claimant as to the symptoms and their functional affects was evaluated using the criteria of SSR 96-7p and found not credible due to the inconsistencies with the objective medical evidence and other reports." (*Id.* at 21.) He further found that "[t]he record failed to support the claimant's allegations of pain and functional limitations prior to the date last insured of December 31, 1991." (*Id.*) Thus, ALJ Greene concluded that the "[f]indings of fact by State Agency medical

11

consultants regarding the nature and severity of the claimant's impairments, expert evidence under SSR 96-6p, are being accorded controlling weight since they are consistent with the overall record." (*Id.*)

      F.      Procedural Background

After the Appeals Council upheld ALJ Greene's decision, Plaintiff appealed the ALJ's decision by filing a complaint before this Court. (D.E. 1.) Ballestaros thereafter filed a motion for summary judgment and a supporting memorandum, alternatively styled as a "Motion to Reverse the Final Decision of the Commissioner of Social Security." (D.E. 7, 8.) The government filed a response brief. (D.E. 10). Ballestaros declined to file any reply to the government's brief.

## II.    <u>LEGAL STANDARD</u>

An ALJ's factual findings will be upheld if they are supported by "substantial evidence." 42 U.S.C. § 405 (g); *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003); *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997). As the Seventh Circuit has repeatedly taught, "[s]ubstantial evidence may be less than the weight of the evidence, and more than a scintilla." *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004) (internal citations omitted); *accord, e.g., Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001); *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir.1995). "Under this standard, the ALJ's decision, if supported by substantial evidence, will be upheld even if an alternative position is also supported by substantial evidence." *Scheck*, 357 F.3d at 699 (citing *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992)); *accord, e.g., Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003); *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987) (affirmance is warranted where reasonable minds could disagree on whether a claimant is

disabled or not).

Upon review, the district court "'is not allowed to substitute its judgment for the ALJ's by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility.'" *Jens*, 347 F.3d at 212 (quoting *Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000) (additional citation and internal quotation marks omitted for clarity); *accord, e.g., Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986) (teaching that a district court "may not decide facts anew, reweigh the evidence, or substitute [its] own judgment for that of the Secretary"). The district court may only reverse the ALJ's decision "if the evidence 'compels' reversal, not merely because the evidence supports a contrary decision." *Betancourt v. Apfel*, 23 F. Supp. 2d 875, 880 (N.D. Ill.1998) (quoting *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)). A reviewing court "'will reverse an ALJ's credibility determination only if the claimant can show it was patently wrong.'" *Jens*, 347 F.3d at 213 (quoting *Powers v. Apfel*, 217 F.3d 431, 435 (7th Cir. 2000)); *accord, e.g., Luna v. Shalala*, 22 F.3d 687, 690-91 (7th Cir. 1994). Credibility determinations are afforded "'special deference'" because "'hearing officers are in the best position to see and hear the witnesses and assess their forthrightness.'" *Jens*, 347 F.3d at 213 (quoting *Powers*, 217 F.3d at 435).

Where an ALJ denies benefits, she must articulate her reasoning sufficiently to enable an informed review. *See Diaz*, 55 F. 3d at 307-08. To satisfy the minimum articulation standard, the ALJ need not discuss "every piece of testimony and evidence," though she must consider all relevant evidence and cannot disregard an entire line of evidence contrary to her findings. *Id.* at 308. When presenting a decision, the ALJ must present a logical bridge from evidence to conclusion. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002).

13

## III.  **DISCUSSION**

To determine whether a claimant is disabled, an ALJ must proceed through a five-step analysis as mandated by 20 C.F.R. § 404.1520(a)-(f); *see also Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).  The ALJ must determine, in order:

1. Whether claimant is currently performing substantial gainful activity.  If the answer is yes, the claimant is not disabled.

2. Whether claimant has a severe impairment at the time of DIB coverage.  If the answer is no, the claimant is not disabled and the inquiry ceases.

3. Whether claimant's impairment equals any impairment listed in the relevant regulations.

4. Whether claimant can perform his past relevant work.

5. Whether claimant is capable of performing other work in the national economy.

20 C.F.R. § 404.1520(a)-(f); *see also Zurawski*, 245 F.3d at 885.  Relevant to this opinion, upon reaching a ruling at Step Two that a claimant failed to demonstrate that he had a severe impairment at the time his DIB eligibility expired, the ALJ is directed not to consider the remaining steps, and he should deny the benefits application.  20 C.F.R. § 404.1520(a)-(f).

Precedent teaches that the claimant bears the burden during the first fours steps of the sequential evaluation process to prove that he has a medically determinable severe impairment that prevents him from being able to perform his past relevant work.  *See Bowen v. Yuckert*, 482 U.S. 137, 147 n.5 (1987); *accord, e.g., Scheck*, 357 F.3d at 702 ("It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability."); *Young v. Sec. of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992); *see also* 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are . . . disabled.  Therefore, you must

bring to our attention everything that shows that you are . . . disabled."); *Luna*, 22 F.3d at 693

(same); *Salazar v. Barnhart*, No. 03 C 3099, 2004 WL 2966919, at *4 (N.D. Ill. Nov. 24, 2004)

(same). It is not enough to demonstrate that a non-disabling condition later worsened into a

disability; the disability must exist as such by the date the claimant's insured status expired. *See,*

*e.g., McLaughlin v. Callahan*, No. 96 C 6893, 1997 WL 754132, at *4 (N.D. Ill. Nov. 21, 1997)

(collecting cases).[4] In making the five aforementioned determinations (or as many as is

necessary to reach a determination), then, the ALJ should consider relevant evidence such as

objective medical evidence, the claimant's medical history, statements from treating and

examining physicians, statements from the claimant, and the findings and opinions of state

agency medical experts. 20 C.F.R. § 404.1412(b).

Upon remand from the SSA Appeals Council, the ALJ found (or at least assumed

*arguendo*) that Ballestaros satisfied Step One of this analytical regime. (A.R. at 18.) The ALJ

then proceeded to examine Ballestaros's claim under Step Two of the checklist—namely,

whether Plaintiff could prove that he was disabled on or before December 31, 1991. In his

decision, the ALJ cited and analyzed Ballestaros's testimony (*id.* at 21), the medical expert's

testimony (*id.* at 20), and the medical records evidence submitted by Ballestaros (*id.* at 19-20).

After considering all these factors, the ALJ ruled that Ballestaros did not demonstrate that he had

---

[4]     The ALJ, of course, has a duty to make a complete record. *See Scheck v.
Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004). The Seventh Circuit has taught that "this
requirement can reasonably require only so much." *Id.* Because one can always continue
developing a record, "taking 'complete record' literally would be a formula for paralysis." *Id.*
(quoting *Kendrick v. Shalala*, 998 F.2d 455, 456 (7th Cir. 1993)). The need for the ALJ to
develop a complete record heightens were—unlike the case here—the claimant is unrepresented
in connection with the administrative hearing. *See Luna v. Shalala* 22 F.3d 687, 692 (7th Cir.
1994) (collecting cases). How much evidence to gather is a subject on which courts generally
respect the Secretary's reasoned judgment. *See, e.g., id.*

a severe impairment at the time his DIB eligibility expired, and thus was not disabled. (*Id* at

21.)

Ballestaros claims error and seeks review on two interrelated issues. Ballestaros presents

them as follows:

> (1) Whether the ALJ's finding of no severe impairment(s) causing the sequential process to end at Step II, absent any reasonable inferences whatsoever, was inappropriate requiring remand?
>
> and,
>
> (2) Whether the ALJ's failure to give any weight to the claimant's own testimony in finding that the claimant did not have a severe impairment at Step II [] requires remand?

(D.E. 8 at 9-10.) As explained below, this Court does not find that the ALJ erred, nor does it find

any ground to reverse and remand.

A.     The ALJ's Finding of No Severe Impairments, Causing The Evaluation to End at Step Two, Was Appropriate and Not Subject to Reversal.

Ballestaros claims that the ALJ's decision was erroneous. Both parties agree (and the law

mandates) that what that matters for purposes of this decision—*i.e.*, deciding whether to whether

to reverse ALJ Greene's decision that Ballestaros did not satisfy the "severe impairment" step—

is whether Ballestaros was disabled as of December 31, 1991.

In particular, Ballestaros posits that the ALJ's decision was inappropriate and "absent any

reasonable inferences whatsoever." (*Id.* at 9.) Although his brief is somewhat difficult to

follow,[5] Ballestaros appears to maintain further that there is no evidence to suggest that he was

---

[5]     For example, Ballestaros states in his brief that "[t]he record does not support an inference or a finding that the intense pain that led to the doctor visit in September 1992 was (as claimant testified) the direct or proximate result of lifting the 100 pound sack some time prior to December 31, 1991," and the brief immediately thereafter characterizes the ALJ as having drawn a "reasonable inference." (D.E. 8 at 9.) The Court will give Ballestaros the benefit of the doubt

not disabled as of December 31, 1991. (*Id.*) He asserts that the ALJ made unreasonable inferences about the nature and cause of his back injury, namely the nature of the sack he lifted and when this sack was in fact lifted. (*Id.*)

The Court respectfully disagrees. Precedent teaches that "[t]he claimant bears the burden of proof in steps one through four." *Young*, 957 F.2d at 389. According to the medical record, medical expert's testimony, and the ALJ's findings, this burden was not met. Plaintiff does not effectively counter this evidence; in his argument on the matter (D.E. 8 at 9-10), he relies on a number of conclusory statements, but he provides no evidence (and certainly not enough to overcome the contradictory testimony and record evidence) that Plaintiff was severely impaired prior to December 31, 1991. As Dr. Jilhewar succinctly noted, Ballestaros was able to provide no documentation or proof of medical evaluations demonstrating either that Ballestaros had back trouble or suffered from symptoms of back trouble in 1991. (A.R. at 210-11.) (Additionally and independently, as discussed further below, there was evidence that indicated that Plaintiff was not disabled in 1991.)

Furthermore, to the extent Plaintiff alleges that the ALJ made unreasonable or inappropriate inferences in ruling that no requisite impairment occurred before December 31, 1991, the Court respectfully disagrees. ALJ Greene considered and weighed three main sources of evidence in coming to his conclusion. (*Id.* at 16-22.) He considered Ballestaros's testimony,

---

and will assume Ballestaros to have misspoke in the brief, because ALJ's are entitled to draw reasonable inferences against claimants without being second-guessed on appeal. (Put differently, if the ALJ made a "reasonable inference," that does not portend well for Mr. Ballestaros.) The Court also will give Ballestaros the benefit of the doubt and address what appears to be the intended argument about his testimony—*i.e.*, that it was inappropriately discounted—not that it was unsupported by the record (in which case the ALJ's discounting of his testimony would seem to be sensible and unobjectionable).

the medical expert's testimony, and the medical records presented. The medical records show that the first time Ballestaros saw a doctor concerning any back problem(s) was in September 1992. (*Id.* at 153) The Plaintiff did see Dr. Garcia in February 1991, but this was for an unrelated matter—symptoms of what Dr. Garcia diagnosed as typhoid fever. (*Id.* at 140.) Despite claiming that his back injury rendered him disabled from pain by January 1991 (*id.* at 140), there is no indication that Plaintiff mentioned this injury and the resulting discomfort to Dr. Garcia in his February 1991 visit. (*Id.*) Further, the medical expert, Dr. Jilhewar, "testified that there is no documentation of the claimant's allegations of low back pain, restrictions, or weakness before the date last insured of December 31, 1991." (*Id.* at 20.) Dr. Jilhewar also noted "that there are no medical records supporting the claimant's testimony of pain and functional limitations prior to December 31, 1991." (*Id.*) Ballestaros's (often internally contradictory or at least confused) testimony, after being considered thoroughly by the ALJ along with the medical records and the medical expert's testimony, did not provide any basis to find that there was a disability as of the relevant date. (*Id.* at 20-21.)

Ballestaros goes on to claim that "[r]easonable doubts on severity are to be resolved in favor of the claimant." (D.E. 8 at 10.) As a predicate for receiving that benefit of the doubt, however, there naturally must first be a reasonable doubt presented in the record concerning the severity of the purported disability during the relevant window of time. As the ALJ explained, as of the end of 1991, "there is nothing in the medical record which tends to show that the claimant had any impairments which had even a 'minimal' effect on his [Ballestaros's] residual functioning capacity." (A.R. at 20; *see also id.* at 21 ("Thus, the record in this case reveals that the claimant was not suffering from any 'severe' impairments as of or prior to the date last

insured.").)

Moreover, with all respect to Mr. Ballestaros, this Court has no legitimate basis to question the ALJ's decision on the basis of any "reasonable doubt" presumption in favor of Mr. Ballestaros. To prevail on his disability claim, Mr. Ballestaros would need to present a credible position concerning a number of issues that facially cast substantial doubt on his position. These issues include the fact that Ballestaros purportedly was suffering from disabling pain that he said had existed since 1991 (*id.* at 202)—or perhaps had existed since "sometime in the 80s, '87, '88" (*id.* at 179), as he elsewhere testified, or perhaps existed since "xx/xx/1990," as he wrote in his DIB application. (*id.* at 114)—but he never applied for DIB until almost ten years after he purportedly became disabled. They also include the fact that Ballestaros he never even seen a doctor about *any* leg, back, or foot pain until September 1992, notwithstanding that it was so severe as to supposedly be disabling during his DIB coverage, which expired at the end of 1991. They also include the fact that, when Ballestaros did see a doctor in September 1992 with a complaint of back pain, the medical record reflects that Ballestaros indicated at the time that he needed "urgent care" and that he further indicated that "the problem occurred after lifting a sack weighing 50 kg" (*id.* at 153), neither of which representations sit comfortably with Ballestaros's contention before the SSA that he was long incapacitated at that time and incapable of lifting more than 10 pounds. (*Id.* at 183.) Ballestaros also would need to present a credible position on why, when he saw a doctor in September 1992 about back pain, the doctor never prescribed any follow-up visits, notwithstanding that Ballestaros contends that he had been and continued to be suffering from disabling pain following the doctor's visit for literally years thereafter. Ballestaros also would need to explain why, during the many times he visited the doctor after that

19

September 1992 visit, he never mentioned any chronic back, leg and foot pain, notwithstanding that he sought treatment for a variety of other ailments, until a visit in 2001 (or some decade after his DIB coverage expired), when he complained of severe leg pain. (*Id.* at 161.) This Court does not purport to reweigh the evidence in the record—the ALJ did that and found against Mr. Ballestaros—but, given that Mr. Ballestaros has suggested that he should prevail because of a "reasonable doubt" rule, it bears mention that this does not appear to be a "reasonable doubt" case. *Accord id.* at 20 (ALJ finding that, "there is nothing in the medical record which tends to show that the claimant had any impairments which had even a 'minimal' effect on his [Ballestaros's] residual functioning capacity," as of the end of 1991).

Plaintiff also cites Social Security Ruling 83-20 as support for the proposition that the ALJ could have reasonably decided the date of impairment to be before December 31, 1991. However, precedent appears to teach that Ruling 83-20 is inapplicable on its own terms. As the Seventh Circuit explained in *Scheck v. Barnhart*, 357 F.3d 697 (2004), "SSR 83-20 addresses the situation in which an administrative law judge makes a finding that an individual is disabled on as of an application date and the question arises as to whether the disability arose at an earlier time." *Id.* at 701 (collecting cases). Where, as in the case *sub judice*, "[t]he ALJ did not find that . . . [the claimant was disabled], . . . SSR 83-20 does not apply." *Id.*

Moreover, and independently, even if SSR 83-20 were in play, SSR 83-20 states that determining when a disability began, or determining when an illness began to exist with sufficient severity so as to warrant DIB payments, "depends on an informed judgment of the facts in the particular case." SSR 83-20. An ALJ is also entitled to make "reasonable inferences" about the progression of an impairment "on the basis of the evidence in file and

20

additional relevant medical evidence." *Id.* In this case, the record reflected a lack of *any* documented evidence—of even complaints by Ballestaros—of any leg, back, or foot pain prior to the DIB coverage termination date at the end of 1991. It also reflected the fact that when Ballestaros saw a doctor for back pain in September 1992, it was for "urgent care" and Ballestaros then indicated that "the problem occurred after lifting a sack weighing 50 kg." (A.R. at 153.) The record also reflected the facts that Ballestaros's doctor gave him a "good" prognosis for "life and functions" after a 1997 accident that occurred when he was repairing a tractor, and that Ballestaros's never mentioned any chronic disabling pain at that time. (*Id.* at 155.) The record also reflected the fact that Ballestaros never even complained of any other disabling, chronic, leg, back, or foot pain until 2001—and perhaps not even then, as he simply complained of his right leg being in a "lot of pain" and that he "can't control the pain." (*Id.* at 161.) The ME, Dr. Jilhewar, also testified against Ballestaros's claim and about the lack of any supporting medical documentation. Under such circumstances, the ALJ could reasonably conclude that no chronic back or leg problems (putting aside whether they ever reached disability status) reached back in time to 1991.

An ALJ's opinion that is supported by substantial evidence will be affirmed even where substantial evidence also supports a contrary finding, *see Elias-Zacarias*, 502 U.S. at 481 n.1; *Kahn*, 64 F.3d at 276, or where reasonable minds could disagree on whether a claimant is disabled. *See Walker*, 834 F.2d at 540. Barring a lack of substantial evidence for support, it is not the province of this Court to overturn an ALJ's judgment just because the Court might arrive at a different conclusion. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000) ("We must examine the entire record, but we cannot reweigh the evidence or substitute our own judgment

for that of the ALJ. If reasonable minds can differ as to whether Schmidt is disabled, we must uphold the decision under review." (internal citations omitted)). As discussed above, based on the evidence and arguments provided to ALJ Greene, it is clearly not the case that the evidence establishes that the claimant is disabled and entitled to benefits. If anything, the relevant evidence points strongly in the opposite direction.[6]

B.     There Is No Basis To Conclude That The ALJ Did Not Give Enough Weight to The Claimant's Own Testimony in Finding That The Claimant Did Not Have a Severe Impairment at Step Two.

Ballestaros claims that the ALJ failed to give any weight to his own testimony in finding that the he did not have a severe impairment at Step Two. (D.E. 8 at 6.) Specifically, Ballestaros maintains that "[t]he ALJ totally dismissed [Ballestaros's] testimony in arriving at his conclusions." (Id.) Furthermore, Plaintiff asserts that the ALJ (i) did not sufficiently justify ignoring Plaintiff's testimony, and (ii) "attempted to confuse claimant when the ALJ suggested [that] claimant's doctor indicated he had lifted a 50 kg bag of fertilizer in September of 1992 . . . ." (Id. at 12.) Ballestaros believes that this lack of weight given to his testimony is grounds for reversal and that the evaluation should proceed through the remaining steps.

Plaintiff provides no evidence that the ALJ did not give proper weight to Ballestaros's testimony in coming to its conclusion. Plaintiff supplied no medical evidence whatsoever in

_____

[6]     Ballestaros argues that "the ALJ failed to consider other impairments in relation to his injury sustained from lifting the 50 kg sack." (D.E. 8 at 10.) Mr. Ballestaros suggests that a remand is therefore needed. This contention is respectfully rejected. Mr. Ballestaros testified his only alleged problems were with the pain in his back, feet, and legs. (A.R. at 177.) In a written filing by his attorney, Ballestaros specifically stated that he alleged disability on the basis of "back pain, pain in feet," and that his "legs are weak." (Id. at 137.) The ALJ thoroughly evaluated the evidence as to these issues. Moreover, the ALJ carefully considered all of the medical evidence as it related to any medical problems prior to the end of 1991 (id. at 20), and the ALJ found that there was nothing that suggested disability status. (Id. at 20-21.)

support of his testimony that he was severely disabled on or before December 31, 1991. *See* 20

C.F.R. § 404.1512(a). The ALJ also noted Mr. Ballestaros's testimony, but found that the

evidence did not establish the existence, though the end of 1991, of any severe impairment—*i.e.*,

any medically determinable impairment resulting in significant limitation of the claimant's

physical or mental ability to perform basic work activities. (The ALJ also noted that the

September 1992 treatment note did not reveal any pathology, even at that time. (A.R. at 19.).)

*See* SSR 96-3p (requiring a medically determinable impairment); SSR 85-28 (directing the ALJ

to look to the medical evidence alone to assess the effects of any such impairment(s)).

Moreover, Mr. Ballestaros's brief as to this second argument is a series of unsupported

conclusions: that ALJ Greene tried to mislead him, that the ALJ had "no basis" for his

conclusion, and that Plaintiff deserved to be deemed credible because he "did not falter or fain

[sic] during the ALJ's attempts to sweat the claimant about the specific date of the injury that led

to the doctor visit in September of 1992." (D.E. 8 at 12.)

These contentions are mistaken. To the extent Mr. Ballestaros's credibility *vel non* even

was material (given his failure to produce any medical evidence in support of his claim of

disability during the relevant time period), in his decision, the ALJ noted and cited three

substantial areas of evidence he considered. The ALJ reviewed Ballestaros's testimony. He

reviewed the medical expert's testimony. And he also reviewed the medical records submitted as

evidence. (A.R. at 16-22.) Only after reviewing all this evidence did ALJ Greene reach his

conclusion that Ballestaros was not disabled as of December 31, 1991. (*Id.*)

To be sure, the ALJ noted toward the end of his opinion that he did not find Ballestaros's

testimony credible in light of the presented medical evidence. (*Id.* at 21.) To the extent that this

23

non-credibility assessment is material—*see* SSR 85-28 (directing the ALJ to look to the medical evidence alone to assess the effects of the requisite medically determinable impairment(s)—precedent teaches that an ALJ's credibility finding will be upheld as long as it is reasonably articulated, finds some record support, and is not "patently wrong." *Kelly v. Sullivan*, 890 F.2d 961, 964 (7th Cir. 1989); *see also Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001); *Diaz*, 55 F.3d at 307-08. The ALJ need not address every piece of evidence or consider every factor in order to satisfy the reasonable articulation standard. *See Diaz*, 55 F.3d at 309. He must recite specific reasons for the credibility finding, supported by evidence in the case record, such that the complainant and subsequent reviewers understand the weight accorded to the complainant's statements and the reasons for that weight. SSR 96-7P, at *2. The regulations identify a multitude of factors that the ALJ must consider in assessing the credibility of a claimant's statements. *See* 20 C.F.R. §§ 404.1529(c)(1)-(4); 416.929(c)(3) (2005); SSR 96-7p, at *2-3; *Luna*, 22 F.3d at 691. Certain factors, however, generally receive more weight than the others. For example, objective medical evidence concerning the intensity and persistence of pain, though not required, is particularly useful and must be considered where available. SSR 96-7P, at *6. Also, a statement that is inconsistent with other evidence is generally not credible. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2005); SSR 96-7p, at *5.

ALJ Greene's credibility determination was not patently wrong. There does seem to be conflict between Ballestaros's testimony and the medical records, and it is clear to the Court that the ALJ assigned little or no weight to Plaintiff's statement regarding the onset date of his back pain. The ALJ's reason for that weight is also clear: Ballestaros's statements were inconsistent with the objective medical evidence and other reports. (A.R. at 21.) ALJ Greene relied on two

particularly significant factors: (1) certain objective medical evidence and testimony and (2) inconsistency. These are not objectionable considerations. The conclusion also is not inconsistent with common experience and common sense: one would reasonably expect a person (particularly who is not hesitant to go to the doctor for other serious ailments) to seek treatment or advice from his doctor if he had, in fact, been suffering from debilitating back, leg, and/or foot pain. One would also expect at least some follow-up visits or treatments—none of which ever happened, including during the relevant time period.

Moreover, the ALJ sufficiently justified his reasons for finding that Mr. Ballestaros was not credible with record support. Specifically, ALJ Greene noted that Plaintiff testified that he had experienced pain prior to December 31, 1991. (*Id.* at 19.) He also highlighted inconsistencies between that statement and other testimony and evidence: (1) the record contains no indication that Ballestaros sought medical treatment prior to December 31, 1991, except for his wholly unrelated treatment for typhoid fever (during which time, incidentally, Plaintiff never complained of back trouble or other symptoms that would indicate he was suffering from a back or leg ailment) (*id.* at 19-20; *id.* at 140-41); (2) most of Plaintiff's medical records after December 31, 1991, conspicuously fail to note any back or leg impairment (*id.* at 19-20); and (3) the medical expert, Dr. Jilhewar, testified to the absence of documentation supporting Plaintiff's testimony of pain and functional limitations prior to December 31, 1991, stating that "there is no documentation of the claimant's allegations of low back pain, restrictions, or weakness before the date last insured of December 31, 1991" and that "there are no medical records supporting the claimant's testimony of pain and functional limitations prior to December 31, 1991" (*id.* at 20, 210-11). Additionally, ALJ Greene noted that Plaintiff indicated at his hearing that he had been

able to lift fifty or sixty pounds until he injured his back in January 1991, at which point his capacity to lift that amount "diminished." (*Id.* at 19, 201, 203-04.) However, Dr. Garcia, who examined Plaintiff immediately after he first complained of back pain—in September 1992—noted that Plaintiff had indicated that his back pain began "after lifting a sack weighing 50 kg." (*Id.* at 19, 153.) Balancing these points, along with the dearth of support Plaintiff provides for his positions, the ALJ satisfied the requirements of SSR 96-7p to the extent he was required to do so. (*See id.* at 21 (ALJ concluding with the explanation that Mr. Ballestaros was found to be not credible "due to the inconsistencies with the objective medical evidence and other reports" and further crediting testimony of medical consultant, as it was consistent with the overall record).)

Finally, the Court rejects Ballestaros's argument that ALJ Greene tried to "confuse" Plaintiff when the ALJ suggested that his doctor indicated that Ballestaros had lifted a 50 kg bag of fertilizer in September 1992. First, Dr. Garcia's records clearly suggest that (if not fairly suggest *only* that) that Plaintiff's need for urgent care in September 1992 was prompted by his lifting a sack of fertilizer—a separate cause from Plaintiff's explanation for how he hurt his back in a permanently disabling manner (carrying his sick wife). Thus, ALJ Greene appears to have simply been trying to reconcile apparently conflicting documentary and testimonial information to learn whether a factual conflict existed and to make informed credibility assessments. Moreover, as the Court discussed elsewhere, there are plenty of reasons for ALJ Greene to have fairly concluded that Ballestaros's testimony about the onset of disabling pain (which is really the only substantial putative evidence in support of his claim) was not credible and not a sufficient basis to undergird a disability finding as of the end of 1991.

Ballestaros has not met his burden of proof showing he was disabled before December 31, 1991; nor has he shown that the ALJ's decision was unreasonable or defective at law. The ALJ considered and cited to a variety of medical records and expert testimony and reached a decision based on substantial record evidence.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motion to reverse the final decision of the Commissioner of Social Security is denied. As the government contends, the Commissioner's decision should be affirmed. (D.E. 10 at 15.)

So ordered.

Mark Filip
United States District Judge
Northern District of Illinois

Dated:    9/13/05